THE G. A. FLAGG.

(District Court, D. Massachusetts. April 3, 1919.)

No. 1695, Civil.

1. SEAMEN ⚙══29(5)—PURCHASE OF VESSELS BY UNITED STATES—EXEMPTION FROM LEGAL LIABILITY—STATUTE.

Under Comp. St. § 8146e, the Shipping Board Act, § 9, merchant vessels when employed solely .as such, gain no exemption from ordinary legal liabilities, as for injuries to a seaman, because of any interest which the United States may have in them through their purchase by the Shipping Board and registry in the name of the United States.

2. EVIDENCE ⚙══48—JUDICIAL NOTICE—REQUISITIONED SHIPPING.

It is a matter of common knowledge that a great part of the shipping of the country has been requisitioned by the Shipping Board.

3. ADMIRALTY ⚙══43—ARREST OF GOVERNMENT VESSEL.

A government vessel is exempt from arrest.

4. SEAMEN ⚙══29(5)—LIBEL FOR INJURY—EXEMPTION OF—ARREST OF VESSEL—BURDEN OF PROOF.

On libel against a steamer purchased by the Shipping Board and registered in the name of the United States, pursuant to Shipping Board Act, § 9 (Comp. St. § 8146e), to recover for personal injuries sustained by a seaman, libelant has the burden to establish that the vessel came within the excepted class of government vessels subject to arrest; that is, those in mercantile employment.

5. ADMIRALTY ⚙══43—EXEMPTION OF VESSEL FROM ARREST—EMPLOYMENT IN MERCANTILE SERVICE.

A steamship purchased by the Shipping Board and registered in the name of the United States pursuant to Shipping Board Act, § 9 (Comp. St. § 8146e), while proceeding from the Great Lakes to New York, via Montreal and Halifax, "for entering upon the public service of the United States," was not employed solely as a merchant vessel, and was entitled to claim exemption from arrest as a government vessel.

In Admiralty. Libel by Norman McIntosh against the steamship G. A. Flagg. Warrant ordered recalled, and arrest discharged.

Berry & Bucknam, of Boston, for libelant.

Thomas J. Boynton, U. S. Atty., of Boston, Mass., for respondent.

MORTON, District Judge. The libelant was a seaman on the American steamship George A. Flagg. He has filed the present libel against the steamer to recover damages for personal injuries alleged to have been sustained in the course of his employment. The United States attorney has appeared specially and filed. a suggestion that the Flagg is, and at the time of the collision referred to in the libel was, the property of the United States, and as such exempt from arrest. Pending a hearing on this suggestion, the warrant issued, and the vessel was taken into the custody of the United States marshal, where she now is. The present question is whether the vessel was subject to arrest, or was exempt therefrom as a government vessel. The facts on which it is to be decided are, by the stipulation of the parties, as stated in the suggestion filed by the United States attorney.

From this stipulation, supplemented by certain minor facts agreed to orally by counsel at the hearing before me, it appears that the Flagg,

being in the port of Cleveland, Ohio, was there requisitioned by the United States Shipping Board; that title to her was taken in the name of the United States, and the purchase price was duly paid. The Shipping Board caused her to be registered in the name of the United States.

Apparently the Flagg was too large to be taken to sea through the canals. She was therefore cut in halves, and in that condition taken to Montreal, where she was reassembled. At that point a crew which included the libelant, was shipped by the Shipping Board. Her officers and crew were employés of the United States, and as such entitled to the benefit of the federal compensation laws. The vessel was directed to proceed to New York "for entering upon the public service of the United States, for which she had been requisitioned and purchased." Suggestion of Want of Jurisdiction, p. 2. While so proceeding, without any cargo on board, she became in distress, and put into Halifax for repairs. It was on this part of the voyage that the accident for which damages are sought in the libel occurred.

After having been repaired at Halifax, the Flagg loaded as ballast 626 tons of coal belonging to the Shipping Board, and, so laden, proceeded to Boston for further repairs, which are still in progress, and upon the completion of which "she will continue her voyage aforesaid for the port of New York for her assignment to the public service of the United States." Suggestion of Want of Jurisdiction.

[1] A question somewhat similar to that here presented arose in Matheson v. S. S. Lake Monroe (Dist. Ct. Mass., November 29, 1918 [258 Fed. ——], now pending on prohibition proceedings in the United States Supreme Court [1]). For reasons there stated, the present case depends, in my opinion, upon the interpretation of section 9 of the Shipping Board Act (U. S. Comp. Stats. § 8146e). That section provides, in substance, first, that—

"Any vessel purchased, chartered, or leased from the board may be registered or enrolled * * * as a vessel of the United States and entitled to the benefits and privileges appertaining thereto."

This, when considered in connection with the rest of the statute, means, I think, nothing more than that the vessels are to be regarded as vessels of this country. Provision is then made for the admission of certain foreign built vessels to the coastwise trade, and the section continues:

"Every vessel purchased, chartered, or leased from the board shall, unless otherwise authorized by the board, be operated only under such registry or enrollment and license. Such vessels while employed solely as merchant vessels shall be subject to all laws, regulations, and liabilities governing merchant vessels, whether the United States be interested therein as owner, in whole or in part, or hold any mortgage, lien, or other interest therein."

The present case seems to turn on whether the words, "such vessels," in the second sentence, mean only vessels which have been purchased, chartered, or leased from the board, or include also vessels operated by the board. The fact that a vessel had been purchased from a governmental agency would not make her immune from arrest in the hands of a private owner. As to such vessels, no statute

<hr>

[1] See 249 U. S. ——, 39 Sup. Ct. 460, 63 L. Ed. ——.

was necessary to make them amenable to legal process. They are included out of abundant caution, an indication that Congress intended the sentence under discussion to have a wide scope. The Shipping Board Act did not permit the actual operation of vessels by the board unless it was unable to contract for the operation of them by citizens of the United States. Section 8146f. The business situation which Congress had in mind in passing section 9 was one in which vessels would be acquired by the board, and operated under charter or lease from it, or sold by it outright. The sentence under discussion covers that situation, and makes such vessels liable to legal process. It does not explicitly include the cases, evidently regarded as very exceptional, arising under section 8146f, in which the board would have to operate the vessels itself, because it could get no citizen to do so on satisfactory terms. But the basic intention seems clear, viz. that merchant vessels should gain no exemption from the ordinary legal liabilities because of any interest which the United States might have in them.

[2] It is common knowledge that a great part of the shipping of the country has been requisitioned by the Shipping Board. There is no provision in the Shipping Board Act for the recovery of damages caused by its vessels. If they are not amenable to ordinary legal process, the only method which has been suggested, by which persons injured by them can recover damages, would be to proceed in the same way as when injuries are inflicted by naval or other strictly government vessels. That method is so cumbersome as to result in many cases in a complete denial of justice. Congress never meant to leave persons injured at sea no other remedy. It seems to me that Shipping Board vessels, while employed solely as merchant vessels, are subject to all laws, regulations, and liabilities governing merchant vessels.

[3-5] The final question is whether the Flagg at the time of the arrest was employed solely as a merchant vessel. She was proceeding light to New York for orders. What she was to do on arrival there, had not been determined. She might have been put into strictly government employ, like carrying troops, or she might have been chartered or assigned into some mercantile employment. The general rule being that a government vessel is exempt from arrest, it devolves upon the libelant to establish that the Flagg came within the excepted class of them which was subject to arrest, i. e. those in mercantile employment. Inasmuch as she was not actually so engaged, and had not been assigned into that line of work, she was not, in my opinion, employed solely as a merchant vessel. She is therefore entitled to claim exemption as a government vessel. I appreciate the force of the suggestion by the libelant that to make exemption from arrest dependent on employment will cause uncertainty in the administration of the law; but the conclusive answer is, as it seem to me, that it is the distinction established by the statute.

It follows that the warrant should be recalled and the arrest discharged.

So ordered.