## DOBSON v. UNITED STATES. EGBERT v. SAME. HASELDEN v. SAME.

Circuit Court of Appeals, Second Circuit.
August 20, 1928.

Nos. 345–347.

1. United States ⚫═══125(1)—Libel did not lie against United States for death of officers of unseaworthy submarine in collision on high seas (34 USCA §§ 981, 982; 38 USCA §§ 151–206; 46 USCA §§ 688, 741–752, 761 et seq. and §§ 781–790).

Under Act March 3, 1925, §§ 1–10 (46 USCA §§ 781–790), Act June 5, 1920, § 33 (46 USCA § 688), Act March 9, 1920 (46 USCA §§ 741–752), and Act March 30, 1920 (46 USCA § 761 et seq.), libel suit did not lie against the United States for death of naval officers of government submarine in collision on high seas, caused by unseaworthiness of vessel without contributory negligence, in view of Act Oct. 6, 1917 (34 USCA §§ 981, 982), and 38 USCA §§ 151–206.

2. United States ⚫═══125(1)—Act authorizing libel against United States for damages by public vessel refers to damages to third persons, not of ship's company (46 USCA §§ 781–790).

Act March 3, 1925, §§ 1–10 (46 USCA §§ 781–790), authorizing libel in personam in admiralty against the United States for damages caused by public vessel, refers to damage caused by ship to third persons, who are not of her company, generally resulting from collision.

Appeal from the District Court of the United States for the Eastern District of New York, in Admiralty.

Separate suits by Goldye M. Dobson, administratrix of the estate of Rodney Hiram Dobson, deceased, by Tempa Russell Egbert, administratrix of the estate of Edmund Webster Egbert, deceased, and by Lawrence B. Haselden, executor of the estate of James Dudley Haselden, Jr., deceased, against the United States, as owner of the submarine S–51. To review a judgment dismissing the libels (24 F.[2d] 529), libelant in each case appeals. Affirmed.

These three suits were alike, and were disposed of by the District Court in a single opinion. In each, the libel was filed by the legal representative (for the benefit of the widow and children) of a deceased naval officer, who lost his life by the sinking of the United States submarine S–51 in collision with the City of Rome on the high seas during the night of September 25, 1925. It alleged that the submarine was unseaworthy, in that it was so constructed that the navigational lights required by law could not be, and were not, displayed by it, and that this defect caused the aforesaid collision and

consequent loss of life, without contributory fault on the part of the deceased officer. Exceptions challenging the jurisdiction of the court were sustained, and the libel was dismissed. The libelant in each case has appealed. Affirmed.

Bigham, Englar & Jones, of New York City (T. Catesby Jones, James W. Ryan and W. J. Nunnally, Jr., all of New York City, of counsel), for appellants.

William A. De Groot, U. S. Atty., of Brooklyn (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. The libels were brought under the Act of March 3, 1925 (43 Stat. 1112). Section 1 (46 USCA § 781) provides:

"That a libel in personam in admiralty may be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States: Provided, that the cause of action arose after the 6th day of April, 1920."

Section 2 (46 USCA § 782) prescribes the venue of suits, and says they shall proceed in accordance with the provisions of the Act of March 9, 1920 (46 USCA §§ 741–752), relating to merchant vessels belonging to the United States, "in so far as the same are not inconsistent herewith," with an exception as to the allowance of interest. Section 3 (46 USCA § 783) relates to cross-libels, in the event that the United States is the libelant. Section 4 (46 USCA § 784) forbids the service of subpoena upon an officer or member of the crew of a public vessel of the United States without the consent of the secretary of the department having control of the vessel or of the commanding officer of such vessel. Section 5 (46 USCA § 785) relates to suit by a national of a foreign government. Section 6 (46 USCA § 786) authorizes the Attorney General to settle claims arising under the act. Section 7 (46 USCA § 787) provides for payment of any final judgment. Section 8 (46 USCA § 788) denies the creation of any lien against a public vessel. Section 9 (46 USCA § 789) accords to the United States the benefits of all exemptions and limitations of liability accorded to owners of vessels. And section

10 (46 USCA § 790) directs the Attorney General to report to each session of Congress final judgments and settlements under this act.

This statute, in conjunction with the Act of March 30, 1920 (41 Stat. 537 [46 USCA § 761 et seq.]), creating a cause of action where the death of a person is caused by wrongful act, neglect, or default occurring on the high seas, is said by appellants to justify their libels. Appellee, on the other hand, argues that the statute should be construed as limiting recovery to damages to property and not contemplating compensation for loss of life. We do not find it necessary to determine this question in the present case. The phrase "damages caused by a public vessel of the United States" would seem sufficient to include loss of life occasioned by the unseaworthy condition of the ship, even though this operates through the intermediation of collision with another vessel, and it may be assumed arguendo that, were the suit brought for the death of a passenger or member of the crew of the City of Rome, caused by the collision, we would sustain it; for the purpose of the Act of March 3, 1925, was apparently to assume liability for damage done by a public vessel (at least in favor of persons not of her company) similar to that already assumed by the United States with respect to its merchant fleet by the Suits in Admiralty Act of March 9, 1920 (41 Stat. 525).

Verbally, there is nothing which excludes liability for damage to property or person of officers or crew. Seamen on the merchant fleet of the United States are given a right of action in case of injury or death, by section 33 of the Jones Act (41 Stat. 1007 [46 USCA § 688]); and this has apparently been treated as an alternative remedy, not preventing suit by their legal representatives under the general admiralty law, coupled with the Act for Wrongful Death on the High Seas. See Axtell v. United States, 286 F. 165 (D. C. N. Y.); Burke v. United States, 15 F.(2d) 573 (D. C. Or.). It must be conceded, therefore, that appellants make a strong argument in favor of liability. The decision in O'Neal v. United States, 11 F. (2d) 869 (D. C. N. Y.), affirmed (C. C. A.) 11 F.(2d) 871, is not against them, for there the loss of life was caused, not by the unseaworthiness of the ship, but by the explosion of a shell, and without evidence of negligence in the handling of it.

[1] Nevertheless the construction contended for by appellants involves so radical a departure from the government's long-standing

policy with respect to the personnel of its naval forces that we cannot believe the act should be given such a meaning. The statute itself does not specify who may maintain suits under it. To allow suit by the officers and crew of the public vessel for damage caused by it to them would be too great a reversal of policy to be enacted by such general terms. The Act of October 6, 1917 (40 Stat. 389 [34 USCA §§ 981, 982]) directs the Paymaster General of the Navy to reimburse officers, enlisted men, and others in the naval service who suffer loss or destruction of or damage to their personal property in the naval service, due to operations of war or by shipwreck or other marine disaster, when such loss, destruction, or damage was without fault or negligence on the part of the claimant, or where the private property so lost, destroyed, or damaged was shipped on board an unseaworthy vessel by order of an officer authorized to give such order. Detailed provisions as to the character of property in respect to which the government assumes liability and as to the making and proof of claims for its loss, destruction or damage, are prescribed, and cognate provisions in the Revised Statutes (sections 288–290) are repealed.

[2] Chapter 3, title 38, of the United States Code (38 USCA §§ 151–206) provides an elaborate pension system for personal injury and loss of life incurred by officers and enlisted men in the navy. These pensions may be thought an inadequate substitute for the recovery of full damages under the Public Vessels Act of March 3, 1925, but they were well known to all who entered the naval service. The policy evidenced by these statutes has existed for a great many years. If it had been the purpose to change that policy

27 F.(2d)—51½

as respects officers and seamen of the navy injured by the unseaworthiness of a public vessel, or by the fault of one another, because that is what in the end it comes to, we cannot think it would have been left to such general language as is to be found in the above-quoted section 1. The more natural meaning of the act is to refer it to damage caused by the ship to third persons who are not of her company, and generally, if not universally, the damage will be the result of a collision. This conclusion is fortified by grouping "damages caused" with "towage" and "salvage services"; the two latter being causes of suit which can arise only in favor of persons outside the ship's company. Foreign nationals, referred to in section 5, would also be off the offending vessel. In the Osceola, 189 U. S. 158, 176, 23 S. Ct. 483, 487 (47 L. Ed. 760), where a state statute provided that a vessel navigating in local waters should be liable "for all damages arising from injuries done to persons or property by such ship," the court said:

"The statute was doubtless primarily intended to cover cases of collision with other vessels or with structures affixed to the land, and to other cases where the damage is done by the ship herself, as the offending thing, to persons or property outside of the ship, through the negligence or mismanagement of the ship by the officers or seamen in charge. To hold that it applies to injuries suffered by a member of the crew on board the ship is to give the act an effect beyond the ordinary meaning of the words used."

We believe that Congress meant to leave upon the members of the naval forces the same risks of injuries suffered in the service of the United States as they had before. The decrees are accordingly affirmed.