## UNITED STATES v. MARINE.
### No. 5477.

Circuit Court of Appeals, Fourth Circuit.
May 11, 1946.

---

Stinson, all of Baltimore, Md., on the brief), for appellant.

George W. P. Whip, of Baltimore, Md. (Avrum K. Rifman, of Baltimore, Md., on the brief), for appellee.

Before GRONER, Chief Justice, United States Court of Appeals for the District of Columbia, and SOPER and DOBIE, Circuit Judges.

GRONER, C. J.

Garland C. Marine, a United States Custom Inspector, was seriously injured when in the discharge of his official duties he was leaving the Steamship "Dundas," a merchant vessel owned and operated by the United States. The injury occurred while the vessel was berthed at a dock in Baltimore Harbor and a libel, under Section 2 of the Suits in Admiralty Act,[1] was timely begun in the District Court for Maryland.

It is conceded by the United States that the injury was due to the defective, unsafe and unseaworthy condition of the vessel and her gangway, and to the fault and negligence of her crew, without contributory fault or negligence on the part of libellant. The District Court made an award of damages, the amount of which is not questioned.

In the court below and on this appeal the contention is that the Employees' Compensation Act[2] provides libellant—an employee of the United States—his sole and exclusive remedy against the Government; in short, that the subsequent enactment of the Suits in Admiralty Act, in the circumstances, added nothing to his rights. The District Court rejected the contention. The single question, therefore, is whether libellant may sue the United States under the Suits in Admiralty Act for an injury sustained by him on board a merchant vessel owned and operated by the United States.

Southgate L. Morison, of Baltimore, Md. (Bernard J. Flynn, U. S. Atty., C. Ross McKenrick, Asst. U. S. Atty., William A. Grimes, and Ober, Williams &

Judge Chesnut, in a well reasoned opinion, bottomed in large measure on the language of the Supreme Court in Brady v.

[1] 46 U.S.C.A. § 742: "In cases where if such vessel were privately owned or operated, * * * a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States * * * provided that such vessel is employed as a merchant vessel * * *."

[2] 5 U.S.C.A. § 751 et seq.

Roosevelt Steamship Co.,[3] held that the suit was properly brought under Section 2 of the Act. That case was an action against the Steamship Company alone, to recover for personal injuries negligently inflicted by the Company while operating the S. S. "Unicoi" for the United States Maritime Commission. The facts in the case are in all material respects the same as in the case here. In both, a United States Custom Inspector in the discharge of an official duty was injured as a result of a defective ladder used as a gang-plank to board or leave the vessel; in each, the vessel belonged to the United States and was engaged in the merchant service. The difference in the two cases, aside from the fact that one was brought at law against the Steamship Company and the other in admiralty against the United States, is that in the Brady case the Government employee had claimed and received compensation under the Employees' Compensation Act, whereas in the present case libellant made no such claim and no compensation was ever paid. In the Brady case suit was begun in a New York State Court and afterwards removed to the District Court, where it was tried to a jury, and, after denial of defendant's motion to dismiss because the remedy, if any, was exclusively under the Suits in Admiralty Act, a judgment was had on the law side of the court. On appeal the Second Circuit reversed (128 F.2d 169), on the ground that the Suits in Admiralty Act provided the exclusive remedy, and that accordingly the injured inspector's rights were limited to a libel in personam against the United States or the Maritime Commission.

The Supreme Court granted certiorari to determine whether the Steamship Company, in the circumstances we have named, was, because of the provisions of the Suits in Admiralty Act, non-suable for the negligent exercise of its delegated powers. Answering the question in the negative, the Court reversed. It will thus be seen that the precise point involved in the Brady case is different from that involved in the present case. But in reaching its conclusion as to the Steamship Company's liability, the Supreme Court announced its views fully on the point involved here. For example, the Court said:[4]

*"We agree with the court below that this was a maritime tort over which the admiralty court has jurisdiction. * * ** 

*"And we may assume that petitioner could have sued either the United States or the Commission under the Suits in Admiralty Act.*

*"In any event such a suit would be the exclusive remedy in admiralty against either of them"*—(i.e., the United States or the Maritime Commission). (Emphasis supplied).

Granting all of this, the Supreme Court, nevertheless, thought that for its negligent acts as operating agent, the Steamship Company was liable to suit without regard to the Suits in Admiralty Act. It is of course not contended, as was pointed out by Judge Chesnut, that the quoted language of the Supreme Court was necessary to its decision, or that it is controlling here. But it would be going very far to conclude that what the Supreme Court said in that case is entitled to no respect, or that it should be disregarded, or even to suggest that it was said incidentally and without consideration. And our view in this respect is confirmed by the fact that the Court was careful to qualify the precise and definite statements we have italicized by pointing out that what it said in that regard would not apply in a case in which the injured employee had asked for and received compensation under the Employees' Compensation Act. All of this indicates, we think, that the whole opinion in the Brady case was intended as a complete coverage of the subject. And if we are correct in this assumption, it follows, of course, that the right of a person in the position of appellee to sue the United States under the Suits in Admiralty Act is unchallengeable.

But wholly aside from all of this, we have no manner of doubt from the plain words of the statute, considered in the light of the ordinary rules of statutory construc-

---

[3] 317 U.S. 575, 63 S.Ct. 425, 87 L. Ed. 471.

[4] 317 U.S. 575, 577, 63 S.Ct. 425, 426, 87 L.Ed. 471.

tion, that we are required to reach the same result. In substance, the provision in question is that whenever a proceeding in admiralty could be maintained against a privately owned and operated vessel, a libel in personam may be brought against the United States in the operation of its merchant fleet. We are not at liberty to alter or add to the plain language of the statute to effect a purpose which does not appear on its face. There is certainly no suggestion in this language, or in any other language of the Suits in Admiralty Act, which implies that the right is limited to persons outside the provisions of the Employees' Compensation Act, and it is a fair inference that if Congress had intended that result it would have said so in unmistakable terms. The fact, of course, is that the inference is directly the other way.

■ In the case we are considering there is no dispute that had the Steamship "Dundas" been privately owned and operated, appellee could have maintained a libel in admiralty.[5] Equally, it is true that until the passage of the Admiralty Act, or at least until the passage of the Shipping Act of 1916,[6] the vessel in fault being the property of the United States, Government immunity would have barred his claim. We may also safely assume that it would have been barred if, in the passage of the Suits in Admiralty Act, Congress had limited the waiver of immunity so as not to apply in the case of a person in the employ of the Government. But nothing of this nature appears. The Act was passed in deference to the decision in The Lake Monroe,[7] in which the Supreme Court held the Government and its wholly owned corporation, in the operation of a merchant vessel, liable under the provisions of the Shipping Act in all respects as a private shipowner, including the arrest of its vessels. In recognition of this liability, Congress enacted the Suits in Admiralty Act exempting the vessels of the United States and its corporations from judicial seizure in order to avoid the embarrassment and delay from their arrest and detention. The Act put, and was intended to put (except as to the arrest of its vessels), the United States on a level with private shipowners in relation to its business or trading activities. Considered in this aspect, we are unable to find anything in its terms or in its history which would preclude appellee's libel. See, Johnson v. United States Shipping Board Emergency Fleet Corporation, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451, in which the legislative history is discussed and the Act held to provide the exclusive remedy against the United States and its business corporations arising out of the operation of its merchant vessels.

■ What we have shown as to a lack of any reservation of immunity in the Suits in Admiralty Act, applicable in the circumstances of this case, impels the conclusion that there is nothing in the Act which expressly or impliedly excludes a Government employee from filing a libel under its terms. And in the same degree it is equally true that there is nothing in the Federal Employees Compensation Act which directly or indirectly would bar the right. The only applicability of the Compensation Act in a case like this occurs when the employee—as in the Brady case—has "made an election" to avail of its benefits. Appellee, having elected to sue under the Suits in Admiralty Act, now has no claim under the Compensation Act. For obviously he may not have both. Moreover, we think the analogy between the case we have and that of a railway mail clerk strengthens the result reached in this case. The right to sue under the Federal Control Act,[8] if anything, is narrower in its terms than the right to sue under the Suits in Admiralty Act. Yet the Supreme Court in Dahn v. Davis, Agent, etc., 258 U.S. 421, 42 S.Ct. 320, 66 L.Ed. 696, upheld the right of an employee of the Government to sue for an injury sustained through the negligent operation of the railroad, but also held that the right could be lost by an election to accept the benefits under the Compensation Act. See also, Payne v. Cohlmeyer, 7 Cir., 275 F. 803.

[5] The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633.

[6] 46 U.S.C.A. §§ 801 et seq.

[7] 250 U.S. 246, 39 S.Ct. 460, 63 L.Ed. 962.

[8] Act of March 21, 1918, c. 25, 40 Stat. 451.

460

Nor do we think the Public Vessels Act[9] affects the question. The decisions holding that an officer or enlisted man in the Navy may not avail of the Act in suits against a Government public vessel are placed largely upon the ground that it would be contrary to the long standing policy of the United States with respect to the personnel of its Naval forces. See Dobson v. United States, 2 Cir., 27 F.2d 807; Bradey v. United States, 2 Cir., 151 F.2d 742. It is apparent that these cases are wholly inapplicable to the facts in the present case.

Affirmed.