**MANDEL v. UNITED STATES.**

No. 10385.

United States Court of Appeals
Third Circuit.

Argued June 6, 1951.

Decided Aug. 16, 1951.

Leavenworth Colby, Washington, D. C., (Holmes Baldridge, Asst. Atty. Gen., Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., J. Frank Staley, Washington, D. C., James P. McCormick, Philadelphia, Pa., Patrick F. Cooney, Washington, D. C., on the brief), for appellant.

Abraham E. Freedman, and Freedman, Landy & Lorry, Philadelphia, Pa., for appellee.

Before GOODRICH and KALODNER, Circuit Judges and MARSH, District Judge.

GOODRICH, Circuit Judge.

This appeal brings before the Court the question of the right of a civilian crew member of a ship owned and operated by the United States to sue the government for injuries received in the course of his employment.

October 8, 1946 a libel was filed by the administrator of the estate of Robert Dillehay, Jr. against the United States of America seeking damages in behalf of deceased's widow and child. It alleged that on October 15, 1944 Dillehay was employed by the United States as a civilian officer of the tug LT–221, that the vessel

hit a mine off Sardinia and sank, causing the death of Dillehay and that the explosion resulted from improper equipment or from careless navigation of the vessel. The government filed exceptions to the libel moving, inter alia, that it be dismissed on the ground that the tug was a public vessel and that deceased was entitled to compensation under the Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq., and that this remedy precluded suit under the Public Vessels Act, 46 U.S.C.A. § 781 et seq.

The District Court [1] concluded that the action was maintainable under either the Public Vessels Act or the Suits in Admiralty Act,[2] and found it unnecessary to decide whether the tug LT–221 was a merchant or public vessel.

The United States thereafter answered, denying negligence, and reasserting its defense of immunity from suit. In due course libellant served interrogatoris on the United States which were answered by it. Finally, a motion under Admiralty Rule 32, 28 U.S.C.A., for production of a report by the Army Board of Investigation regarding the sinking of the tug LT–221 was made by libellant before Chief Judge Kirkpatrick. The court granted the motion on August 14, 1950.[3] A petition for rehearing was then filed, along with a writing signed by the Secretary of the Army, called a "claim of privilege," stating that the report was confidential and declining to permit its production. Judge Kirkpatrick refused a rehearing by order dated November 1, 1950. December 11, 1950 judgment was entered against the government for failure to comply with the order to produce the documents and it was ordered that the case proceed to trial solely on the question of damages. From this order the United States appeals.[4]

The appellee suggests that no question is before us on this appeal except that of privilege by the Secretary of the Army to refuse to release information which he regards it important to keep secret. The refusal to recognize the claimed privilege was the basis of the District Court's entry of judgment, it is said, and the points on appeal must be confined to the propriety of that order. Appellee's counsel admits readily, however, that he would like to see the broader question of liability passed upon.

■■ We think that the question of liability of the United States under the statutes relied on is before us at this time. Since the case is, as already indicated, properly in this Court on appeal, we think the appeal is as broad as any questions raised by the appellant on the record as it now exists. The reason is analogous to the rule which requires a plaintiff not to split his causes of action at the pain of being precluded from further suit when one segment has been split off and decided.[5] Permitting an interlocutory appeal is an exception to the general rule of the federal statutes that appeals may be had only from final judgments. The exception certainly does not go so far as to permit multiple appeals where they may be avoided. We think it both good law and good sense that we should consider at this stage the fundamental point made by the United States, namely that it is not liable at all to this plaintiff.

It is true that the District Court entered judgment in favor of the libellant and against the United States because of the latter's refusal to produce a given document or record.[6] While from one point of view that action is in the nature of a penalty, the wider question is whether the United States is liable to suit at all. If

1. E.D.Pa.1947, 74 F.Supp. 754.

2. 46 U.S.C.A. § 741 et seq.

3. D.C.E.D.Pa.1950, 93 F.Supp. 692.

4. This is an interlocutory order from which an appeal is allowed under 28 U.S. C. § 1292(3).

5. Restatement, Judgments § 62 (1942).

6. Such action is authorized by Admiralty Rule 32C(b) (2) (iii). This rule is identical with Rule 37(b) (2) (iii) of the Rules of Civil Procedure, 28 U.S.C. The entry of a default judgment under the latter has been held not to preclude inquiry by the Court of Appeals into the jurisdiction of the District Court. Michigan Window Cleaning Co. v. Martino, 6 Cir., 1949, 173 F.2d 466. Cf. Fenton

it is not, it is not at fault in failing to produce what, in that event, is an irrelevant document. We proceed, then, to the broader question.

We have in this case the not unusual situation of a problem arising under a statute to which the statute itself gives no answer. It is clear that if the vessel on which officer Dillehay was employed was a "public vessel" his widow and child are entitled to compensation as provided in the federal statute.[7] But there was nothing in the federal compensation law in 1944 which said expressly that if one is entitled to compensation that was the only remedy he could have.[8] On the other hand, there is nothing expressly said in the Public Vessels Act or the Suits in Admiralty Act that a man injured under the circumstances set out in the plaintiff's libel may or may not sue. Furthermore, the only help counsel have been able to give us on the matter of legislative history is argumentative conclusion from the fact that such and such was done. We are told what Congress "must" have had in mind, but nothing in the way of committee report or anything authentic or convincing on the subject.

We are necessarily faced then with the general problem: May an injured person who is eligible to compensation claim additional rights against the United States? If so, we assume an action to enforce them could be maintained by the admininstrator of the decedent for the damages caused by his death. 46 U.S.C.A. § 761. We think there are several reasons why the Compensation Act should be held to be the exclusive measure of rights in this case.

■ 1. The first reason is the analogy to the rule under Workmen's Compensation Acts which are now an accepted and almost universal part of state legislation. It is the general rule that unless the act is by its terms optional, remedies provided by the act are exclusive when the act is applicable, at least so far as rights against the employer are concerned.[9] One must not generalize too widely from this rule because many of the statutes provide expressly that the remedy is exclusive.[10] Nevertheless, we think the general rule represents the crystallization of the thought of both law makers and courts upon the subject. The Compensation Acts are intended to provide a more humane, adequate and generally fair method of dealing with accidents incurred by employees in the course of employment than the former common-law rules of employers' liability. They are intended to do away with prolonged and expensive litigation with hard cases going uncompensated because of inability to show fault on the part of the employer. We think that in general the natural inference would be that the Compensation Act represents the substitu-

v. Walling, 9 Cir., 1943, 139 F.2d 608. Sovereign immunity is a jurisdictional matter. See Nassau Smelting & Refining Works, Ltd. v. United States, 1924, 266 U.S. 101, 106, 45 S.Ct. 25, 69 L.Ed. 190; State of Minnesota v. United States, 1939, 305 U.S. 382, 389, 59 S.Ct. 292, 83 L.Ed. 235; Restatement, Judgments §§ 5, comment k and 9, comment b (1942).
   Compare, also, Fed.R.Civ.Proc. 55(e).

7. 5 U.S.C.A. § 751 et seq.

8. In 1949 the Federal Employees' Compensation Act was expressly made exclusive. 63 Stat. 861, 5 U.S.C.A. § 757(b). The amendment contains the proviso, " * * * That this subsection shall not apply to a master or a member of the crew of any vessel." This amendment has no application to the case at bar, since the action was pending when the amendment became effective. See FECA Amendments of 1949, § 303(g), 63 Stat.

867, 5 U.S.C.A. § 757 note. Furthermore, what little legislative history is available indicates only that Congress did not wish to legislate affirmatively on the rights of seamen because no discussion of the problem had been had in committee. See Cong. Rec. 13,607–609 (1949). Johnson v. United States, 4 Cir., 1950, 186 F.2d 120, 124.

9. Prosser, Torts, p. 543 (1941); Schneider, Workmen's Compensation Law, §§ 89–154 (1941).

10. The absence of a provision declaring the FECA exclusive is not helpful as an indication of Congressional intent. At the time of its passage there were no statutes permitting suit against the government. Note, however, that the Shipping Act of 1916, 39 Stat. 728, 46 U.S.C.A. § 801 et seq., the first of such acts, was passed the same day as the FECA.

tion of a more enlightened form of remedy for industrial accidents than the ordinary tort action for damages.

2. The reliance on the Compensation Act alone will remove an element of unfairness otherwise present in the type of case represented here. The typical make-up of the personnel of public vessels is a crew of employees some of whom are in the armed forces, some of whom are civilians. They are all said to be subject to the same discipline while engaged in the particular voyage,[11] although the civilians have the privilege of terminating their service in a fashion more convenient to themselves than is open to members of the armed forces. Those members of the armed forces injured while on active duty have such compensation and only such compensation as Congress has provided by the military pension and compensation laws.[12] We think discrimination in favor of a civilian employee would be unfortunate unless such discrimination is expressly forced upon us by legislative mandate.[13]

3. We find weight in the government's argument that it would not be in the public interest to have judicial review of the question of negligence in the conduct of military, or semi-military, operations. The operation of ships or land forces in the presence of the enemy is a matter where judgments frequently have to be made quickly and where judgments so made by commanding officers must have prompt and immediate response. It will not, we think, aid in the operation of the armed forces if the propriety of a commander's judgment is to be tested months or years afterwards by a court or a court and jury. What, in the light of subsequent events, may appear to be a lack of caution may have been the very thing necessary, or apparently necessary, at the time the action was taken.

This point is sharply emphasized by examination of the various allegations of negligence set out in the libel. Among others it charges the following:

"(b) failing to direct the course of the vessel in such a manner so as to avoid the mine field or other dangerous area, the existence of which the respondent knew or should have known;

"(d) failing to provide, maintain and operate a proper and adequate degassing device or system, or other anti-mine machinery and equipment;

"(h) failing to give plaintiff's intestate prompt and adequate warning of his danger under the circumstances;"

We do not think that examination of such questions with a view to determining negligence of an officer in a combat zone is a suitable subject for court review. Suppose the injuries were sustained in a large scale hurried evacuation comparable to Dunkirk, or an even larger scale invasion like that on the coast of Normandy. Court examination of the precautions taken for the safety of civilian employees on hospital ships, tugs and transports to determine whether due care to this plaintiff had been observed seems to us an incongruous subject for litigation.

Further, the production of evidence necessary in such an investigation in a public trial does not seem to us desirable from the standpoint of national defense. It is true that there is no longer armed conflict in the Italian theater, and there has not been for some time. But armed conflict in which we are involved goes on in other parts of the world. There are interests unfriendly to the United States which would be willing enough to learn anything possible about the way our operations are or were carried on. We have no lack of confidence in the

11. 10 U.S.C.A. § 1473(d). Cf. In re Berue, D.C.S.D.Ohio 1944, 54 F.Supp. 252; McCune v. Kilpatrick, D.C.E.D.Va.1943, 53 F.Supp. 80.

12. Bradey v. United States, 2d Cir., 1945, 151 F.2d 742, certiorari denied 1946, 326 U.S. 795, 66 S.Ct. 484, 90 L.Ed. 483, rehearing denied 1946, 328 U.S. 880, 66 S.Ct. 1348, 90 L.Ed. 1647; Dobson v. United States, 2 Cir., 1928, 27 F.2d 807, certiorari denied 1929, 278 U.S. 653, 49 S.Ct. 179, 73 L.Ed. 563. Cf. Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153. (Tort Claims Act).

13. It would also discriminate against civilian seamen employed by the United States through the War Shipping Administration who are authorized to sue the United States for the tort but are excluded from the FECA by the War Shipping Administration (Clarification) Act of 1943, 50 U.S.C.A.Appendix, § 1291.

discretion or integrity of our trial courts. But that is not the point. No judge has it as part of his task to act as an intelligence officer for the armed forces. He cannot tell how the facts developed out of one incident, seemingly isolated and unimportant, may fit into a larger picture worked upon by an active and skilled hostile espionage system. We do not think he should be called upon to pass upon such a question.

■ In our view, therefore, the considerations point to the conclusion that the rights of the parties involved in this litigation are such rights as the Federal Employees' Compensation Act gives them and no more.

As would be expected in such a difficult and close question as this one is, we do not find the authorities speaking with unanimity. The very question before us has been presented and thoughtfully considered in the Fourth Circuit. Johnson v. United States, 1950, 186 F.2d 120.[14] It is hardly necessary to add that we disagree with diffidence from a conclusion that Circuit reaches. But since we do reach a different conclusion it is our business to say so and we do. The other authorities relevant to the subject are as follows:

The Supreme Court has held that the Public Vessels Act permits suit for personal injury as well as property damage, American Stevedores, Inc., v. Porello, 1947, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011, and for injuries caused by the crew as well as the vessel itself, Canadian. Aviator, Ltd. v. United States, 1945, 324 U.S. 215, 65 S. Ct. 639, 89 L.Ed. 901. It has held also that

claiming and accepting payments under the FECA bars suit against the United States under the Federal Control Act. Dahn v. Davis, 1922, 258 U.S. 421, 42 S.Ct. 320, 66 L.Ed. 696. See also Brady v. Roosevelt S.S. Co., 1943, 317 U.S. 575, 581, 63 S.Ct. 425, 87 L.Ed. 471; Militano v. United States, 2 Cir., 1946, 156 F.2d 599, Public Vessels Act; Parr v. United States, 10 Cir., 1949, 172 F.2d 462, Tort Claims Act 28 U.S. C.A. §§ 1346, 2671, et seq. And recently the Supreme Court held that members of the military were not authorized by the broad language of the Tort Claims Act to sue the United States for injuries received on active duty, but were relegated to their compensation and pension remedies. Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153. Cf. Brooks v. United States, 1949, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200.

The Fourth Circuit has held that the compensation remedy did not preclude suit by a United States customs inspector against the United States under the Suits in Admiralty Act. United States v. Marine, 4 Cir., 1946, 155 F.2d 456; cf. The Culberson, 3 Cir., 1932, 61 F.2d 194.[15] The Second Circuit has twice concluded that the military components of the crew of public vessels cannot sue under the Public Vessels Act. Bradey v. United States[16] and Dobson v. United States, supra. O'Neal v. United States, D.C.E.D.N.Y., 11 F.2d 869, affirmed 2 Cir., 1926, 11 F.2d 871, held that the Public Vessels Act did not authorize suit by a member of the crew of a coast guard ship, but the decision was based partly on the theory, since rejected by the Supreme Court in the Canadian Aviator

14. Accord: Henz v. United States, D.C.N. D.Cal.1950, 1950 A.M.C. 714, 9 F.R.D. 291. Cf. United States v. Loyola, 9 Cir., 1947, 161 F.2d 126 (libel dismissed on merits); Gibbs v. United States, D.C. N.D.Cal.1950, 94 F.Supp. 586 (election barred recovery); Sims v. United States, N.D.Cal.1950, 1950 A.M.C. 714, (maintenance and cure); Jentry v. United States, D.C.S.D.Cal.1947, 73 F.Supp. 899 (back wages). Contra: Lopez v. United States, D.C.S.D.N.Y.1944, 59 F.Supp. 831.

15. In many cases suit against the United States by a crew member of a government-owned merchant vessel has been

permitted without discussion of the FECA. See, e.g. Krey v. United States, 2 Cir., 1941, 123 F.2d 1008; Sevin v. Inland Waterways Corp., 5 Cir., 1937, 88 F.2d 988; Stewart v. United States, D.C. E.D.La.1928, 25 F.2d 869. See Gibbs v. United States, D.C.N.D.Cal.1950, 94 F. Supp. 586, 589 n. 9.

16. In that case it was stated that: " * * * Congress did not expect those in its service upon 'public vessels' to enjoy at once the privilege of employees' compensation and the right to recover damages for the same injuries." 2 Cir., 1945, 151 F.2d 742, 743.

case, that the Public Vessels Act covered only damages caused by the vessel itself.

Further analysis of these decisions seems not to be useful. We are in square conflict with the Fourth Circuit decision and the view expressed by our confreres in the Ninth Circuit.[17, 18] If the considerations advanced above are correct, our conclusion follows.

The question whether the vessel involved in the accident out of which this litigation grows was a public vessel was not passed upon by the District Court. There is general allegation that it was a public vessel, and there are allegations of fact and affidavits which tend to support the public vessel conclusion, but no proof was heard. If the libellant desires to prove that the tug LT–221 was not a public vessel he should have that opportunity. If it is not, the case presents lines of inquiry the extent of which need not be speculated upon at this time.

In view of our disposition of the case as discussed above, the question of privilege does not need to be passed upon.

The judgment of the District Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

17. United States v. Loyola, 9 Cir., 1947, 161 F.2d 126. The libel seeking damages for failure to provide maintenance and cure was dismissed on the merits.

18. Since this opinion was written the Second Circuit has decided the case of Johansen v. United States, 1951, 191 F.2d 162. The majority in that case agree with the point of view we have endeavored to express and disagree with Johnson v. United States, 4 Cir., 186 F.2d 120.