**Mrs. Delta MELANCON**

v.

**MORRISON–KNUDSEN INTERNATIONAL COMPANY, Inc., et al.**

**Civ. A. No. 12995.**

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Feb. 9, 1971.

Scofield & Bergstedt, Lake Charles, La., for plaintiff.

Donald E. Walter, U. S. Atty., Shreveport, La., William E. Gwatkin, III, Admiralty & Shipping Section, U. S. Dept. of Justice, Washington, D. C., for defendants.

EDWIN F. HUNTER, Jr., District Judge:

This action arises out of the death of Henry Melancon, who according to the record lost his life when bombs placed by the Viet Cong exploded and sank the Dredge JAMAICA BAY, on which he was employed, on or about January 9, 1967. Melancon was an employee of a joint venture called RMK-BRJ, a Navy cost-plus contractor, which in its capacity as a joint venture, was the bareboat charterer and operator of the JAMAICA BAY at the time of Melancon's death.

Plaintiff brings suit to recover for the death of Henry Melancon, her husband, naming RMK-BRJ in its capacity as a joint venture and separate juristic entity as the only defendant in the caption of her complaint, but in the body of the complaint naming as defendants and demanding collective judgment against only the four corporate members of the joint venture and not the joint venture itself. In prior proceedings, we here ruled that there was no suit pending against the joint venture, from which no judgment had been demanded, against which no process had issued, and which had never been served.[1] The Court also dismissed the cause against two of the four member corporations for insufficiency of service of process and lack of jurisdiction over the person.[2]

Following the ruling on jurisdictional matters, this suit was stayed pending a determination by the Bureau of Employee's Compensation of the Department of Labor whether plaintiff had a compensation remedy under the Defense Base Act, 42 U.S.C.A. §§ 1651–1654, or the War Risk Hazards Act, 42 U.S.C.A. §§ 1701–1717, or either of them, the plaintiff having made a claim for compensation benefits, and the defendants

1. Our Memorandum Ruling on jurisdictional matters, entered on March 13, 1969, is attached (Exhibit 1).

2. The two defendant member corporations as to which the case was dismissed were Raymond International of Delaware, Inc., and Morrison Knudsen International Company, Inc. The remaining defendants are: (1) Brown & Root, Inc., and (2) J. A. Jones Construction Company, both of whom are non-resident corporations licensed to do business and doing business unrelated to the joint venture in Louisiana.

claiming that the compensation remedy was exclusive so as to bar and preclude this action.[3] On December 4, 1969, the Director of the Bureau of Employee's Compensation made a compensation order awarding death benefits to the plaintiff under War Risk Hazards Compensation Act. Following entry of the compensation order, on plaintiff's motion of August 11, 1970, we vacated the stay order and the case was restored to the active calendar. It is now pending upon motion of the defendants for summary judgment.

## THE LEGAL ISSUES

1. Whether this suit may be maintained against two of the four members of the joint venture where all of the members are not subject to service of process and the joint venture has not been made a party to the litigation.

2. Whether the War Risk Hazards Compensation Act, under which plaintiff has claimed and been awarded compensation benefits, provides her with an exclusive remedy so as to preclude her from maintaining this action against her husband's employer to recover damages for his death, which occurred when bombs placed by the Viet Cong exploded and sank the dredge on which he was employed.

In its present posture, the case is pending against two corporate members of the joint venture. By motion for summary judgment, these two defendants contend that, standing alone, merely in their capacity as members of the joint venture, they may not be sued on a joint venture obligation and are not themselves obligated to the plaintiff on the cause of action she asserts.

Resolution of questions concerning capacity to sue or to be sued are by the Federal Rules of Civil Procedure left for the most part to state law. After discussing the capacity of individuals and corporations, Rule 17(b) of the Federal Rules of Civil Procedure provides that:

In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States * * *.

In order to determine whether the members of a joint venture may themselves be sued on an obligation of the joint venture, we examine Louisiana law.

In Louisiana, joint ventures are governed generally by the same rules as are partnerships. Frazell v. United States, 213 F.Supp. 457, 462 (W.D.La. 1963), reversed on other grounds 335 F. 2d 487 (5th Cir. 1964), cert. denied 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965); Ault & Wiborg Co. v. Carson Carbon Co., 181 La. 681, 688, 160 So. 298, 300 (1935); Ludeau v. Avoyelles Cotton Co., 164 La. 275, 113 So. 846 (1927); Duncan v. Gill, 227 So.2d 376, 381–383 (La.App.1969), writ denied 255 La. 338–341, 230 So.2d 834–835 (1970), cert. denied 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809 (1970). Turning then to the Louisiana law of partnership, we find under Article 737 of the Louisiana Code of Civil Procedure that a partnership has the procedural capacity to be sued under its partnership name, but that (Art. 737):

The partners of an existing partnership may not be sued on a partnership obligation unless the partnership is joined as a defendant.

The Article is declaratory of the rule of law established by Louisiana jurisprudence, that liability upon the obligations of a Louisiana partnership does not become enforceable against the members thereof, separate and apart from the partnership itself, until the partnership

3. The stay order, entered on June 9, 1969, is attached. (Exhibit 2).

has dissolved. E. B. Hayes Machinery Co. v. Eastham, 147 La. 347, 352–354, 84 So. 898, 899–900 (1920); Key v. Box, 14 La.Ann. 497 (1857); Moore v. Easom, 46 So.2d 162 (La.App.1950).[4] In Louisiana, therefore, a judgment cannot be obtained against a member of a partnership upon a partnership obligation, while the partnership exists, except by also obtaining a judgment against the partnership itself. Snyder v. Davison, 172 La. 274, 278, 134 So. 89, 91 (1931); Harrison v. Frye, 46 So.2d 382 (La.App. 1950).

■ As observed in our earlier ruling on jurisdictional matters, the joint venture has not been made a party to this suit, no process has been issued against it, no prayer for relief has been made against it, and the suit against it simply does not exist. Since the joint venture as such is not a party defendant, the suit cannot be maintained against the two corporate members who still remain as defendant parties in the case.[5] Kline v. C. W. Dawson Lumber Co., 230 La. 901, 911, 89 So.2d 385, 389 (1956). The action against Brown & Root, Inc., and J. A. Jones Construction Company, the two remaining corporate defendants, must therefore be dismissed. However, plaintiff now wishes to file supplemental pleadings seeking relief against RMK-BRJ and argues that service on one member of the joint venture constitutes valid service on it (the office and principal place of business of which is located in San Bruno, California). This would present another contested procedural issue which need not be faced today, because we feel the motion for summary judgment must be granted because plaintiff's exclusive remedy against her husband's employer for his death is provided by the War Risk Hazards Compensation Act.

■ At about the same time she commenced this action alleging that decedent had been "a member of the crew" of the Dredge JAMAICA BAY (Complaint, Art. V), plaintiff also filed a claim for compensation benefits with the Bureau of Employees' Compensation of the Department of Labor. This claim was contemplated by her decedent's employment contract, pursuant to which he was employed as an assistant superintendent by RMK-BRJ, the joint venture, which provided that compensation insurance benefits for injuries or illnesses arising out of the course of the employment were generally to be paid in accordance with the Longshoremen's and Harbor Workers' Compensation Act, as extended by the Defense Base Act, 42 U.S.C.A. §§ 1651–1654.

As to war risks, however, the employment contract made a distinction and expressly provided that (Clause 9(b)):

> For injuries, disabilities, detention, death, or other losses arising out of or in connection with war, rebellion, and strife, or the acts of civil authority or of the armed forces of any government, the Employee's remedy shall be such, if any, as is provided in the War Risk Hazards Act (42 U.S.C. 1701–1717) or other statutes in amendment to or in substitution therefor; but the Contractor [RMK-BRJ] shall have

---

4. RMK–BRJ is an existing joint venture, engaged in various construction projects for the Navy in Southeast Asia at the present time, with its principal place of business in the United States at San Bruno, California (Exh. D).

5. Without the joint venture as a party defendant, the suit ought not to go forward in any event. To the extent that plaintiff claims a substantive right under the Jones Act, 46 U.S.C.A. § 688, she can bring suit only against her decedent's employer, Williamson v. Daspit Bros.

Marine Divers, Inc., 337 F.2d 337, 339 (5th Cir., 1946), but her decedent was not employed by the two remaining defendants or either of them. The employer and the bareboat charterer and operator of the Dredge JAMAICA BAY was the joint venture itself, which in its capacity as such may have defenses of set-off for payments made under a $50,000 war risk life insurance policy carried for its employees, and limitation of liability under the Shipowners' Limitation of Liability Act, 46 U.S.C.A. §§ 183–189.

no responsibility or liability to the Employee or his successors upon any claim from these causes. (Matter in brackets supplied).

The employer's reports disclosed that plaintiff's decedent had lost his life "when bombs placed by the Viet Cong exploded, sinking the dredge" on which he had been employed and his death clearly came within the war risk rather than the ordinary compensation category. In subsequent amplication of her compensation claim, plaintiff through her counsel accordingly made specific reference to the provision of her decedent's employment contract which called for application of the War Risk Hazards Compensation Act, stressed the report that her husband had been killed when the Viet Cong blew up the JAMAICA BAY, furnished some further documentation to establish that her decedent's death had been caused by a war risk hazard, emphasized that her claim was being made under the War Risk Hazards Compensation Act and *not* under the Defense Base Act, and contended that the War Risk Hazards Compensation Act did not contain any provision excluding the member of a crew of a vessel from compensation benefits thereunder. (See Exhibits A through F(4) attached).

Following entry of the stay order by this Court for an administrative determination of plaintiff's rights to compensation benefits, the Director of the Bureau of Employees' Compensation upon consideration of the contentions made on plaintiff's behalf and the evidence on file entered a compensation order awarding death benefits to the plaintiff under the War Risk Hazards Compensation Act (Exh. F(5)).[6] The decision of

the Director, to whom the final authority in the approval of war risk hazard compensation claims has been delegated (42 U.S.C.A. § 1706; 20 CFR § 01.41; 24 F.R. 8472, Oct. 20, 1959), is by the statute made "final and conclusive on all questions of law and fact and not subject to review by any other official of the United States or by any court by mandamus or otherwise." 42 U.S.C.A. § 1715. It is thus conclusively settled for this Court that plaintiff is entitled to compensation benefits under the War Risk Hazards Compensation Act.

The key question concerning the compensation issue is whether the War Risk Hazards Compensation Act provides plaintiff with an exclusive remedy so as to preclude this action. A study of the statute and the controlling decisions persuades us that plaintiff's compensation remedy is indeed exclusive, and we are required to grant the motion for summary judgment.

The War Risk Hazards Compensation Act, 42 U.S.C.A. §§ 1701–1717, with certain exceptions provides for payment of compensation benefits with government moneys out of the Federal Employees' Compensation Fund (see 5 U.S.C.A. § 8147; 42 U.S.C.A. § 1701(a)) in cases of injury or death of employees of government contractors resulting from a war risk hazard. 42 U.S.C.A. § 1701(a). Except for the scale of compensation benefits, which is that contained in the Longshoremen's and Harbor Workers' Compensation Act, 42 U.S.C.A. § 1702, the War Risk Hazards Compensation Act makes the provisions of the Federal Employees' Compensation Act, 5 U.S.C.A. §§ 8101–8150, applicable to war risk deaths or injuries sustained by a contractor's employee.[7] Where an injury or

---

6. Hearings are not authorized by the War Risk Hazards Compensation Act, and the adjudication of cases is upon written evidence as in cases under the Federal Employees' Compensation Act, 20 CFR #01.41. There are provisions for administrative review upon application of a claimant adversely affected by a final decision of the Director (5 U.S.C.A. §§ 8124, 8128, 8149; 20 CFR §§ 501.1(a),

501.3(a)), but such provisions do not apply here where the Director's decision was in the claimant's favor.

7. The term "war risk hazard" is expressly defined by the statute, 42 U.S.C.A. § 1711 (b), so as to include an armed conflict in which the United States is engaged, whether or not war has been declared, and an armed conflict between military

death to a contractor's employee proximately results from a war risk hazard, and whether or not the employee was then actually engaged in the course of his meployment, the act expressly provides that (42 U.S.C.A. § 1701(a)):

> * * * the provisions of the [Federal Employees' Compensation Act] shall apply with respect thereto in the same manner and to the same extent as if the person so employed were a civil employee of the United States and were injured while in the performance of his duty * * * (Matter in brackets supplied).

Accordingly, once a determination has been made that the contractor's employee or beneficiary is entitled to War Risk Hazard Compensation benefits, as here, then the provisions of the Federal Employees' Compensation Act become applicable, and the claimant's rights and limitations become the same as though her decedent had been a government civil service employee. To put it another way, if plaintiff's decedent was a member of the crew of a vessel, then plaintiff's rights as against her decedent's

employer are no greater than if decedent had been a federal civil service seaman. What this means in the context of the instant case is illustrated by Mandel v. United States, 191 F.2d 164 (3rd Cir. 1951), affirmed sub nom. Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952), which arose out of the death of a civil service crew member of an Army tug who lost his life when the tug hit a mine and was destroyed while entering a port in Sardinia. The Court of Appeals held that his administrator could not maintain an action for the damages caused by his death, because the Federal Employees' Compensation Act was the exclusive measure of the rights of a civil service seaman. Judge Goodrich aptly stated (191 F.2d, at 166): [8]

> It is the general rule that unless the [workmen's compensation] act is by its terms optional, *remedies provided by the act are exclusive* when the act is applicable, at least *so far as rights against the employer are concerned.* (Emphasis and matter in brackets supplied)·

forces of any origin within a country in which a contractor's employee is serving. It means a hazard arising from the use of any weapon or explosive by a hostile force or person, 42 U.S.C.A. § 1711(b) (1), or from the action of a hostile force or person, 42 U.S.C.A. § 1711(b) (2), as well as from "the operation of vessels * * * in a zone of hostilities. * *" 42 U.S.C.A. § 1711(b) (5).

8. During the pendency of the *Mandel* litigation, the Federal Employees' Compensation Act was amended, 63 Stat. 854 (1949), so as among other things expressly to contain the exclusivity provision that is now found at 5 U.S.C.A. § 8116 (c):

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the in-

strumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

The legislative history of the reference contained in the following sentence to a master or member of a crew of a vessel, 63 Stat. 854, 861–862, 868 (1949), discloses that it was intended only to reserve the question of the rights of civil service seamen pending Supreme Court resolution of a conflict among the circuits, which was subsequently settled in favor of the exclusivity of the compensation remedy by Johansen v. United States, 343 U.S. 427, 435–438, 72 S.Ct. 849, 96 L.Ed. 1051 (1952), and remains settled today. See Amell v. United States, 384 U.S. 158, 160–171, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966); Johnson v. United States, 402 F.2d 778 (5th Cir. 1968), cert. denied 394 U.S. 930, 89 S.Ct. 1195, 22 L.Ed.2d 459 (1969); Aho v. United States, 374 F.2d 885 (5th Cir. 1967), cert. denied 389 U.S. 930, 88 S.Ct. 292, 19 L.Ed.2d 282 (1967).

The Supreme Court affirmed in Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952), resolving a prior conflict among the circuits and conclusively establishing that the Federal Employees' Compensation Act provided the exclusive remedy against the United States as the employer for the death or injury of federal civilian seamen entitled to its compensation benefits.

Since *Johansen* it has been the settled law of this circuit and elsewhere that federal civil service seamen who have a compensation remedy are precluded from bringing suit against their employer. Patterson v. United States, 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959); Johnson v. United States, 402 F.2d 778 (5th Cir. 1968), cert. denied 394 U.S. 930, 89 S.Ct. 1195, 22 L. Ed.2d 459 (1969); Aho v. United States, 374 F.2d 885 (5th Cir. 1967), cert. denied 389 U.S. 930, 88 S.Ct. 292, 19 L. Ed.2d 282 (1967); Jarvis v. United States, 342 F.2d 799 (5th Cir. 1965), affirming per curiam Petition of United States, 212 F.Supp. 214 (E.D. La.1962), cert. denied 382 U.S. 831, 86 S.Ct. 70, 15 L.Ed.2d 75 (1965); Mills v. Panama Canal Co., 272 F.2d 37 (2nd Cir. 1959), cert. denied 362 U.S. 961, 80 S.Ct. 877, 4 L.Ed.2d 876 (1960). The same result necessarily follows in this case, where the Federal Employees' Compensation Act with its principle of exclusivity is made applicable to those entitled to a war risk hazards compensation remedy, and where even if it were not, the general rule that a compensation remedy is exclusive and precludes an action against the employer would require dismissal of this action. United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966); Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); Lowe v. United States, 292 F.2d 501 (5th Cir. 1961), affirming per curiam 185 F.Supp. 189 (N.D. Miss.1960); Aubrey v. United States, 103 U.S.App. D.C. 65, 254 F.2d 768 (1958); Mandel v. United States, 191 F.2d 164 (3rd Cir. 1951), affirmed sub nom. Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952).[9]

We conclude that plaintiff has a remedy and is receiving compensation benefits under the War Risk Hazards Compensation Act, 42 U.S.C.A. §§ 1701–1717. As a result, her rights are measured by the Federal Employees' Compensation Act, 5 U.S.C.A. §§ 8101–8150, which the War Risk Hazards Compensation Act incorporates by reference, 42 U.S.C.A. § 1701(a). Under that statute, as well as according to general principles of law, a person is precluded from maintaining an action against his employer to recover damages for a death or injury for which an administrative compensation remedy has been provided. The War Risk Hazards Compensation Act accordingly provides Mrs. Melancon with her exclusive remedy against her decedent's employer in the premises, and compels entry of judgment dismissing this action.[10] For these reasons, defendants' motion for summary judgment should be granted, and the Court should enter summary judgment dismissing plaintiff's action with prejudice and costs. It is so ordered.

---

9. Another reason given by Judge Goodrich for holding in *Mandel* that compensation should be the exclusive remedy was that it was not in the public interest to have judicial review of the question of negligence in the conduct of military or semimilitary operations, and that the production of evidence necessary to defend the case was not desirable from the standpoint of national defense. Mandel v. United States, 191 F.2d 164, 167–168 (3rd Cir. 1951), aff'd on other grounds sub nom. Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952). Those reasons seem to be singularly valid in this war risk case of a death from enemy action where a jury trial has been demanded.

10. According to the Government's brief, she has also received the benefits of a $50,000 War Risk Life Insurance policy carried by the joint venture.